argument of the morning. This is appeal number 23-33-38. Thomas Ghelf v. Town of Wheatland and others. Mr. Weininger? Yes. Good morning, Your Honor. Hold on one second. Okay, go right ahead. Thank you. May it please the Court, Andrew Weininger for the appellant of which Thomas Ghelf and Constance Klein are present here as well. The United States Supreme Court has stated that federal courts have a virtually unflagging obligation to exercise jurisdiction that Congress has granted. In this case, the district court did not follow this directive and dismissed appellant's road-taking and constructive-taking claims for lack of subject-matter jurisdiction. Appellants asked this court to reverse the district court and remand for further proceedings. In dismissing the complaint, the district court first relied on the Rooker-Feldman doctrine. In Andrade, Chief Judge Sykes' concurring opinion observed that Rooker-Feldman is a narrow doctrine and that courts continue to apply Rooker-Feldman outside of its carefully circumscribed ground. That is what happened here. I think you're more compelling argument is based on Gilbank, our recent en banc, rather than a concurring opinion where we said essentially the same thing. Well, and I was going to move right to Gilbank. In Gilbank, this court and Judge Saini, you were in the majority opinion regarding removing the inextricably intertwined analysis and in this case, that contributed to confusion in the district court and that's why this court ended that analysis. What is inextricably intertwined? Since our complaint did not directly challenge any state court judgments, Rooker-Feldman does not apply. We did not ask the court to review any state court judgment and or reverse any state court judgment. So the practical effect of Gilbank and the not applicability of Rooker-Feldman is very clearly that the road taking claim must survive. We headed that off in our briefing before the court. The inextricably intertwined analysis that took up a lot of the briefing, what is inextricable, what is extricable, it was very difficult. With that, no longer a bar. Rooker-Feldman clearly doesn't apply. So when we look at the road taking claim, there's nothing else barring it. The district court dismissed on the Tax Injunction Act, this isn't a tax, the road taking claim is not a tax. The court didn't dismiss the road taking on the Tax Injunction Act, did it? I thought it was just the tax assessment and the subsequent foreclosure action because of that. So the Tax Injunction Act wouldn't bar the road taking claim. The road taking is Rooker-Feldman alone. Our position is Rooker-Feldman alone. As far as the district court goes, the district court saw no subject matter jurisdiction because of Rooker-Feldman on the road taking claim. And Younger. And our position is Younger does not apply because there's no ongoing state. I thought Younger was only the tax issue. You don't have to waste your argument time on that. We can figure that out. But I thought it was just on the tax issue. I believe it was both. Our position was or is that Younger doesn't apply. There's no ongoing state proceeding. The district court didn't address the... On the Tax Injunction Act, you aren't disputing, are you, that Wisconsin provides for a plain speedy and efficient remedy in state court? You're just arguing that you weren't able to take advantage of that because of the defendant's actions. Is that correct? Correct. That the defendants didn't follow the procedures that Wisconsin has in place for property taxes. Do you agree that your client didn't file a written objection to the tax assessments? Our client made efforts to appear before the Board of Review, which is one step of the process. The other step that the law requires, and this is what the Do you agree that your client never filed that written objection? I didn't see anything in the record. I don't believe there's... If there's anything in the record, it would be in the complaint. I know there was an objection made and there was efforts made to object whether it was written. I'd have to go back and look at the complaint to see if it was whether written or in person. So you can't identify anything in the record today in terms of a written objection to the tax assessment. There's no written objection as an exhibit in the complaint or anything of that sort. The complaint does lay out the efforts that were made by the appellant, Mr. Gelf, to object repeatedly. And so that's the basis for our constructive taking claim that the procedures weren't followed. And it was a harassment campaign that led to this situation where they were not able to put them in this situation. The cases that were cited by the district court and opposing counsel with regards to the Tax Injunction Act have to do with really direct challenges to taxing systems. There's the Darn case is a challenge to the ERISA. But there are cases challenging assessments as well. There are. You're not arguing that the Tax Injunction Act doesn't apply to tax assessment decisions, are you? That would be the... Herman is the case that's cited in the briefs. There's a distinction. Well, that case draws a distinction where the plaintiffs really, it was a direct challenge to the assessment. And they referenced that the board of... that the plaintiffs in that case did not claim that the board of review failed to act in accordance with the procedural requirements. That wasn't a claim in there. So there are examples of the Tax Injunction Act applying to property taxes, but direct property assessments. But those are direct challenges to that assessment as opposed to our claims in this case, which is the constitutional constructive taking claim as a result of not following the procedures that are set forth in Wisconsin law. I'd also point out that the... Aren't you still really challenging the assessment itself, though, and the subsequent foreclosure as a result of that? We're challenging the fact that the town refused to follow the procedures set forth under Wisconsin law, and that's caused a... A large tax assessment. It certainly has, and a large hundreds of thousands in interest as well that the assessor herself has admitted that were incorrect, that they would be corrected. They never were corrected. Her license was revoked, and they've continued on this path of pushing the tax assessment forward in spite of all of these facts. So I certainly think it's... With the Tax Injunction Act, obviously no impact on the road taking claim, but with regards to... Could we talk about that road taking claim for a moment? Yeah. What is your current position with respect to that claim? Why does that claim survive? That claim survives. In addition to Rooker-Feldman not being applicable, the Tax Injunction Act obviously doesn't apply, as we discussed. Younger doesn't apply because there's no ongoing state court action with regards to the road claim. There's discussion with regards to statute of limitations. It's a very recent... The road taking claim is very recent. There's discussions with regards to a release. The release too is from... Actually today, seven years ago in 2017, so the release would have no impact on that. I don't know if it's necessary to even... Then we get into issue preclusion. There was a... That's right. Let's talk about that for a while. What's your position on issue preclusion? It was a proceeding in the Wisconsin court. A certiorari petition was filed in 2020. We've cited the Hanlon case in our brief that certiorari and 1983 don't fit together, that the plaintiff is not required to join 1983 claims in a certiorari action, and failing to do so does not preclude a subsequent... Your position is that under Wisconsin state law, the result in the certiorari action does not preclude bringing a 1983 action in Wisconsin state court for that matter. You could bring a 1983 in state court. Your view is your clients were still free to proceed with it. Yes. That was the 2020 certiorari petition was dismissed without prejudice. It was a limited form of review with regards to certiorari. We've cited in our brief that... What was the issue in the certiorari case? Regarding the town's road resolution declaring a driveway on my client's property to be a public town road. It was dismissed for failure to exhaust administrative remedies. What would those remedies have been that they thought you should have exhausted? That was not part of the 1983 claim. Under NIC, there is no requirement to exhaust administrative remedies. We could bring it straight to court. At the time that 2020 lawsuit was filed, there was no obligation to bring it along with the 1983 claim. In doing so, we aren't precluded from then. Subsequently, and that's the Kearney case that we cite in our brief, that certiorari is a limited form of review and does not preclude a later 1983 case. So your view is that's still a viable option? Yes. The district court should not have dismissed that. Yes. I think really the only question mark prior to Gillbank was Rooker-Feldman and how broad the inextricably intertwined analysis really was. If we were to give you a second crack at the takings clause issue in the 1983 with respect to the road, what would you have to establish? That it was a taking without public purpose and without compensation. And that's clearly what it was in this case. It's a driveway. It's always been a driveway. The Wisconsin Department of Transportation has granted driveway permits for what the town now claims to be a road. So following Nick, there is no requirement to exhaust those state remedies. We can bring the 1983 claim following that taking and that taking occurred in 2020. So the issue of preclusion wasn't addressed. That issue wasn't addressed by the district court. We addressed it in the briefing. And I think the road taking claim is quite clear. Can I stay on the road taking claim? Okay. And I appreciate the dialogue on the issue of preclusion. I had questions about that as well. But as we're speaking right now, there is a state, not direct road claim, but there is a state foreclosure proceeding that is pending but stayed, correct? Correct. In the Wisconsin courts. Yes. Okay. Who are the parties to that litigation? Mississippi Sports and Recreation and the county. Okay. And the county. So there's no, the town is not, and the town is the party alleged to have engaged in the unlawful taking of Pinnell Lane, right? Gulf Road or Pinnell Lane. Are those one and the same thing? There's, I believe now it's Pinnell, well, it's had a number of different names. Doesn't matter. Doesn't matter. The road. Call it the road. Yes. Okay. So the town is not a party to that. No. Okay. But the town is the one that's alleged to have taken it. Not the county. Correct. Okay. All I'm trying to get, so that foreclosure case that is stayed right now, even if the stay were lifted and that thing were to go forward, that case were to go forward, did it have anything to do with the road? Correct. Okay. Now, am I right that your clients lodged counterclaims in the foreclosure case that stayed? Yeah. Do any of those counterclaims bear upon the road? No. Not at all? No. Not even in the, on the view that, well, the only reason the road's taken is because it's part of this campaign of alleged retaliation for opening up the nightclub? The 1983 claims in the foreclosure case related to the tax foreclosure taking of tens of thousands. Okay. The reason I'm asking you about that is there are some statements in the briefs that the counterclaims in the foreclosure action that is stayed, that those counterclaims mirror the claims that are affirmatively brought in the federal 1983 case that is being appealed here. They do, I would say, mirror it. And the road is part of it. I would say they mirror the constructive taking, certainly the constructive taking claim regarding the property tax foreclosure. But your point is not the road? It's not the road. The foreclosure case has to do with the tax. And I, what I'm trying to say or sort out in my mind is even if the counterclaims somehow included the road, there's a mismatch of party. There's a mismatch of party. Because the county is going to say, well, if somebody took the road, it's not us. It's the town. It's a mismatch of party with regards to the county. It's also on the plaintiffs. The plaintiffs, it's just Mississippi Sports and Recreation, whereas obviously the appellants in this case is much more, there's additional parties. Mr. Gelfand. All right. I think I got it. All right. So I'll Before we move off of issue preclusion, when the state court decided that you couldn't proceed with certiorari because you had not exhausted administrative remedies, it did not appear that the court made any substantive determination on any issues. Is that a fair representation? I was not counseled to that. Based on the record, there were no substantive findings. It was just dismissed on those grounds. And as you said, it was without prejudice. So you could we cite in our brief that it's the case law is that if it's for failure to exhaust administrative remedies, that that assumes it would be without prejudice unless there was no opportunity to then exhaust those remedies. But here, since we filed it under 1983, and there's no requirement following the Nick case to do so, then there is no it is without prejudice. Has there been any attempt to exhaust remedies on that? There is not. Not since that. The next step was to file this this lawsuit. And I'll reserve the remaining time. Yeah, very well. Okay. Let's hear Mr. Stadler. Good morning. May it please the court. Good morning. My name is Ron Stadler. I represent the county defendants in this matter. Ms. Jacobs represents the town. We've split up our argument this morning. I'll start with Gilbank because I think the court's opinion in Gilbank certainly clarified the application of Rooker Feldman. But I don't believe that it changes the results of this case at all. And why wouldn't it change the Rooker Feldman issues given that inextricably intertwined which the court relied on and logically so because that's what our case law said at the time. The court didn't have the benefit of Gilbank, but we have made crystal clear in Gilbank that inextricably intertwined no longer is the test for Rooker Feldman. Right. And it's a perfectly great question because that becomes the key to why does Gilbank not apply here. When you look at Gilbank, it's kind of interesting to me because they took away inextricably intertwined, so you can't say it, you can't apply it, but look at footnote 5 of the decision and it says, you know, we don't like in we don't like this term and we don't like it, but here's what you look at. You look at whether the plaintiff is asking the court to change the state court opinion. No, it's a little bit different than that. What it says is are you claiming that the injuries were caused by the state court judgment. Not that we don't like what the state court did and we're going to act as an appeal court for the state court. It's whether or not the injuries were caused by the state court judgments, which is much, much, much, much more narrow. It is, and I looked at that and you look at Gilbank and you look at this case and what I looked at in terms of that was when you're looking at the legality of the predicate act that formulates the basis of the plaintiff's claim and that's been affirmed by the state court, that causes the damages. Yeah, I don't know. I'm not all that persuaded by, I mean, you might think Gilbank's wrongly decided. We've struggled with Rooker-Feldman. It is what it is. The justices will tell us whether we're right or wrong one day, but I have a hard time seeing the state court being the cause of a takings clause violation with respect to the assessment of taxes or the taking of a road or anything like that because the state court's not the tax assessor. The tax assessor is the county. But I take that and I step a little bit further back than that and it's not, is it just the cause of the takings? So is it the cause of a takings claim? The predicate of their takings claim is that you gave us an invalid tax assessment. That's the harm. And that harm wasn't... Who's the you in that? Well, they claim... Not the court, not a state court judge. No, but there's a process that allows that to play out. But it's the no that, when you say no, that the injury wasn't caused by the state court, that Rooker-Feldman doesn't apply. The injury was caused by the state court. They start with the tax assessment and Wisconsin has a process through Chapter 70 and Chapter 74 that lets you play that all the way out. And you play that all the way out through your rights to go to the court and have the court say somebody's right and somebody's wrong. They don't have a final injury until they get that court decision, which is very different than Gill Bank. You know, in Gill Bank, she was challenging the unreasonable search, the not allowing her Miranda rights and the lack of notice. And what the court proceeding was about was the best interests of the child. And those two were... But the plaintiffs are suing the county here for the county's over-assessment of the taxes and the foreclosure proceeding. They phrase it that way, but keep in mind, the county never assessed any taxes against plaintiff. The town assesses taxes. Once those are assessed, they're due. And the county's role is simply to collect them. Well, the court didn't play any role in that assessment. The court played a role in giving us finality of the assessment process. This is just a repeat of the argument we had in Gill Bank. I'd move forward. Thank you. And I was here for the argument, actually, not the en banc, but the original one in Gill Bank. And I found it interesting. Well, Rooker-Feldman has tied us in knots. And the reason inextricably intertwined is no longer with us is because we couldn't figure it out after years of trying to. So I move on. And I move on and I say the Tax Injunction Act, clear and unambiguous. We have a proceeding that is sitting there on this foreclosure, foreclosure of a tax. It clearly applies. I don't know how plaintiffs get around that. They can't bring this action in federal court when we've got the action pending in the state court. And what do they seek in this court? They argued if MSR prevails in the federal lawsuit, it will likely result in the tax assessments and interest claimed in this matter being declared illegal and void. They're trying for their second kick at the cat. I don't think there's any issue under the Tax Injunction Act that would allow them to continue against the county. I want to move on also and touch on a couple other points that the court has talked about here today. One of those, one hasn't been, that is the release. And the release is very clear. Anything that happened prior to 2016 was released by MSR and Mr. Gelf. Was it 2016? Go ahead. I thought it was 2017. I thought it was September 6th of 2017. I stand corrected. You are correct. 2017. Okay. Can we talk about the road a minute? We can, but it's not my issue. That's my question. Ms. Jacobs can address the road. The county is not in any way alleged to have taken the road, played a role in taking the road, conspired to take the road, etc., right? Correct. If the road has been taken, that's the allegation, the road's been taken by the town and the town alone, correct? Correct. Okay. So you don't have any, you don't have anything to do with the road? No dog in the fight. Okay. We'll see whether Mr. Weininger agrees with that just to narrow this down a little bit. Okay. So we do have the release. And the release gives up all of these facts that they allege to be a pattern of harassment by the county. And there's nothing left of them. The only thing they can point to outside of the release period is the foreclosure action. And the foreclosure action is just the natural result of the statutory process under Chapter 74. And the road. That's outside of it. I know that's not your issue, but that was 2020, I believe.  I don't speak on behalf of the town, but obviously the dates line up where the release went. And the town wasn't a party to the release. It was just with the county. Okay. You probably, all right, go ahead. Just one last point. I won't eat up excess time when it's not necessary for the court. The last point, just the claim preclusion versus issue preclusion. And issue preclusion applies here. They had the opportunity to litigate the issue of the validity of the tax assessment. And they didn't do it correctly. And they caused themselves their own harm by not doing it correctly. No written challenge in the record. The reason it's not in the record doesn't exist. And that's the problem for them. It's not that we're saying that a Section 1983 claim can't be brought. That would be claim preclusion. And we're not arguing claim preclusion. It's issue preclusion. The issue of the validity of that tax assessment has already been resolved by the state court. And they don't get to come back and have a second kick at it. Okay. What law controls the issue preclusion analysis? Federal law or Wisconsin law? Wisconsin state law. Yeah. Okay. So we're at least in agreement on that. Yes. Okay. If the panel has more questions, I'd be happy to answer them. Otherwise, I will have Ms. Jacobs address the town and the road. Okay. Very well. Thank you very much. Yeah. Mr. Stadler, thanks to you. May it please the court. My name is Gerilyn Jacobs. I am counsel for the town of Wheatland, current board chair Jane Baldwin, and former board supervisors Robert Streeter, who has passed away, and Don Williams. The district court did reach the correct conclusion when dismissing the road claim. We look at Rooker-Feldman first because it deals with subject matter jurisdiction. I'm going to ask you the same question. Because our Rooker-Feldman case law is now much more narrow than it was pre-Gilbank. What is the injury here in the road takings that was caused by the state court? Because the injury alleged is based on the town's actions in taking the road. And the complaint is we have to study the complaint for that. And if you look at the second cause of action, the cause of action against the town for taking, what plaintiffs' appellants say is that the town has asserted that there is a road. Does not say, I'll address the constructive taking as well. But it says there it asserted. So we have to ask how has the town asserted that that roadway is a public road and not a private driveway? Now, plaintiffs' appellants do not specifically mention any formal legal assertions. It has to be legal assertions. Somebody can't stand on the street corner and say, we think that's a public road. It has to be something legally binding, something with heft. The only two items that have any heft to it would be the July 2020 resolution by the town and then the subsequent defense by the town in the Vernon County Circuit Court action and the receipt of the judgment there. So the injuries caused would be those legal documents, the 2020 resolution, or the Vernon County 2021 judgment. The 2020 resolution, though, is the ultimate source of it, right? And what follows then in terms of litigation is just trying to give effect to the resolution, at least as I see it. I don't disagree with that. Okay, so that would mean the origin of the road taking is the resolution. Now, it ends up getting enforced, prosecuted, affected, pick your verb, through litigation in state court. But a state court judge, herself or himself, just didn't decide one day to take a road. Correct, but they did uphold plaintiffs' appellants' challenge to that resolution, and judgment was reached there. Right, but the – okay, right. That's my point as to that. I think we're all in agreement as to what the facts are there. Importantly, as well, is that the sixth cause of action is one of declaratory relief, and the declaratory relief that plaintiffs' appellants want is a declaration that the roadway is a private driveway and not a public road. So if that is achieved, then, in fact, it will be a de facto repeal, a reversal of the judgment by the state court denying the invalidation of the road, and it would be a repeal of the 2020 resolution itself as well. What's interesting here is that what we have at stake is that we have a declaration, the town's resolution. They're stating that over there is a public road. And what they want with their declaratory relief action is to say that over there is not a public road. And what do you do with the law of your state that says you don't need to bring the 1983 action with the certiorari action? I don't disagree with that. Wisconsin could have had a different rule on that. It doesn't, though. I don't agree with that, but the declaratory relief action is not a 1983 action. It's a declaratory relief action. So then we're looking at the constructive taking. Isn't the declaratory relief one of the remedies you can receive under a 1983 suit? I don't think, yeah, I think that's right. Sure? No. Absolutely. Anyway, it is a declaratory relief. So when it comes to, if we were just talking about the constructive, the taking claim, what we would look at, I would not disagree that we're not looking at Rooker Feldman there. We're just analyzing that. And what we have there is that the, when we look again at the taking, what he's saying, it's an assertion. And, again, we have the legal documents there. Now, the only, and we're also looking at the window of the time frame of the actionability, because in 1983 there was a six-year statute of limitations. How else could you have taken the road other than passing the resolution? Wasn't that the whole purpose of the town's resolution? I mean, he took the road. The road is there. The road has always been there. Now, we have an allegation. We're at the pleading stage. We have to take the allegations as fact. But the road has always been there. And what was done with the resolution was taking advantage of a Wisconsin statute that says, when you have, the road's been there forever. The road is a gravel road that has preceded all of us here. And so you don't have, so it has always been a road. You have a resolution that validates, that confirms that it is a road, but it's not changing the character of the road. It's just, it's not changing the character of the road because the road has always been there. Well, as opposed to what, getting bulldozed and turned into a shopping center? I don't know what you mean by that. I mean, I think these folks, what they're saying is that when it goes from being a private road to a public road, do we care about that? Sure we care about that because we lose ownership of the road. And my argument is that it's not a private driveway. The first element of their taking claim. But they claim it is. It is, it is. They claim it is, and that's what their takings clause is all about. And the character of it I don't think is relevant to the ownership of it, private versus public. So. You sent your equipment down without getting their permission, right? You sent town equipment down that road. Snowplows or something, right? In 2021, they're following the resolution. That's right. Yes. So you passed a resolution and then you didn't ask their permission, but you did send town equipment down the road. So what I want to look at is the window then. Because what has happened here is that he's basing his claim on a constructive discharge. So if we say that the assertion is not the judgment, if we say the assertion is not the resolution, if we say it is the resolution, then preclusion applies because it already has been litigated. You're stuck. You're stuck. And in the Hanlon decision, as Judge Ripple is referencing from the Wisconsin courts, you don't have to litigate the merits of the 1983 substantive takings claim in the state court certiorari action. That's Wisconsin law. And so we can't. And we're bound by that, whether we agree or disagree. The Wisconsin courts are the definitive authority on that. I do want to address the continuing violation doctrine because we do have three individually named defendants. Before you do that, if we disagree with you about Rooker-Feldman and we don't think Rooker-Feldman applies to the road takings claim, what is your strongest argument that we should affirm the district court on the road claim nonetheless? It was litigated already that the same plaintiffs' appellants who claim a property interest in that roadway already brought a challenge. So issue preclusion or claim preclusion?  Is the reference to the litigation the certiorari action? Forgive me? What litigation are you talking about? It was litigated where and when? That was litigated. That's the Vernon County Circuit Court action from 2021. The certiorari. Correct. What issue was decided in that case by the court that would preclude the federal court from taking it up under issue preclusion? I can't say there's a substantive ruling on it. It was the correct court. Then how do you have issue preclusion if you don't have a substantive ruling on an issue? It would be more claim preclusion that they have already brought a claim challenging the resolution. Can I ask you one factual question? Yes. This foreclosure action, do you know about it? I have not argued that the foreclosure. No, I do not. You don't know anything about it? The town is not a party to it. Okay. That's what I was going to get at. Any chance to have the opportunity to discuss the continuing violations doctrine? You briefed it. I think we got it. We understand it. Thank you, Your Honors. This is on the statute of limitations point. We got it. Okay. Very well. Thank you. Thank you. Judge, to answer your question with regards to the road taking claim, without just compensation, without a public purpose that relates to the town, how the road taking claim fits into the bigger picture of the constructive taking, that would be against the town and the county. We've really been focused a lot on the property tax area and the road taking area, but there's also other facts that are set forth in the complaint regarding the harassment campaign over many, many years. And all of those facts go into the constructive taking, the most recent being the road taking.  I appreciate what you're saying. We have to look at this claim by claim, right? We're not going to look at it as a broad narrative, right? There's been the resolution. And claim number two, as I understand it, is the claim that is isolated to the taking of the road. Correct. Okay. And that's what we would focus on, the taking of the road. And I think you said the town and only the town is the party to that. Okay. Right? You agree with that? The taking of the road is the town. In isolation. In isolation. Count two in isolation. Correct. Count one is the broader campaign. My words, not yours. The broader harassment campaign that led to the higher tax, et cetera, et cetera, et cetera. Correct. Okay. And then there was a reference to, well, the road has always been there. It's always been a driveway that's set forth in the complaint. And abruptly the town passed this resolution. It wasn't just the resolution. It was sending the snow plow truck up the road to hit Mr. Klein. There's letters in the complaint from the town's attorney. Ordering the. Ms. Klein. And the plaintiffs to remove items from what they claim to be the town road. So the complaint does set forth many facts regarding the road taking, not just the resolution. It also includes the letter from the S the sergeant who had investigated it. So the. There, there is a significant amount. In there, I think with regards, there was meant mention of the tax and junction act that obviously to the extent that would apply to the property tax, I would just be regarding that. This court cannot enjoin suspend or restrain. It doesn't apply to compensatory or punitive damages. Those would still stand. Independent. And I think I've covered all the points. So, um, yes. We'd ask this, this court to reverse the, um, District court's opinion and remand for further proceeding.  Mr. Whining. We appreciate it very much. Mr. Stadler is Jacobs. Thanks to you. We'll take the appeal under advisement. Thank you. Okay.